**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:26-CV-00576-KDB-MTO**

| | |
|---|---|
| **NSS, INC. ET AL.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**NEURO SOLUTIONS 100, LLC,**<br><br>**Defendant.** | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. No. 3) in which they seek an injunction prohibiting Defendant Neuro Solutions 100, LLC ("Neuro Solutions") from proceeding with an arbitration of certain disputes arising out of their contractual relationship. The Court has carefully considered this motion, the Parties' briefs and exhibits and oral argument on the motion from the Parties' counsel on August 18, 2026. Because the Court finds that the North Carolina state courts have already necessarily decided the issue of Neuro Solutions' contractual right to arbitrate the parties' disputes in connection with earlier litigation between Plaintiff NSS, Inc. ("NSS") and Neuro Solutions, the Court will **GRANT** the motion and enjoin Neuro Solutions from proceeding with the arbitration.

## I. LEGAL STANDARD

Temporary Restraining Orders ("TRO") and Preliminary Injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure, which provides that a TRO may be issued only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in

opposition." Fed. R. Civ. P. 65(b)(1)(A). A Preliminary Injunction may be issued only on notice to the adverse party. Fed. R. Civ. P. 65(a)(1). Here, Neuro Solutions has received notice, filed a written response and participated in oral argument. Thus, the Motion before the Court will be considered a motion for a Preliminary Injunction.[1]

The Fourth Circuit has described the standard for a preliminary injunction as follows:

> Though an "extraordinary remedy," a preliminary injunction is warranted where the plaintiff has established "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).

dmarcian, Inc. v. dmarcian Eur. BV, 60 F.4th 119, 138 (4th Cir. 2023).

All four requirements must be "clearly" satisfied. Winter, at 24, 129 S. Ct. at 376. In sum, it is an exacting test because, according to the Supreme Court, "a preliminary injunction is an extraordinary remedy never awarded as of right." *Id.*

If a Preliminary Injunction is found to be warranted, then "crafting a Preliminary Injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579 (2017) (citing *Winter*, 555 U.S. at 20, 24). And "[i]t is well established ... that a federal district court has wide discretion to fashion appropriate injunctive relief in a particular case." *Richmond Tenants Org., Inc. v. Kemp*, 956 F.2d 1300, 1308 (4th Cir. 1992). Indeed, a court should "mold its decree to meet the exigencies of the particular case." *Int'l Refugee Assistance Project*, 582 U.S. at 580 (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and

[1] To the extent that Plaintiff's TRO motion is still before the Court, the standard for granting either a temporary restraining order or a preliminary injunction is the same. *Microban Int'l, Ltd. v. Kennedy*, No. 322CV00620KDBDSC, 2023 WL 2533085, at *1–2 (W.D.N.C. Mar. 15, 2023).

Procedure § 2947 (3d ed. 2013)). In doing so, a court must ensure a preliminary injunction is "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr, Inc*., 512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)) and be mindful that "[t]he purpose of such interim equitable relief is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward." *Int'l Refugee Assistance Project*, 582 U.S. at 580 (internal citation omitted).

## II. FACTS AND PROCEDURAL HISTORY

Neuro Solutions, a Texas limited liability company, sold and marketed a medical device that provides electrical nerve stimulation called the NS100. (Doc. No. 1, "Compl.", ¶ 9). In late 2023, Neuro Solutions' chief executive officer Michael Bingham began negotiating with a medical practice called Charles W. Jones, M.D., P.A. ("Jones P.A."), for, among other things, Jones P.A. to purchase the right to market and sell the NS100 in North Carolina. (Compl. ¶ 10). Plaintiff Charles Jones owns Jones P.A. *Id*. In mid-December 2023, Neuro Solutions and Jones P.A. entered into a series of agreements, including a PNS/PENS Clinical Research Representative Agreement ("Research Agreement") and a Sales and Services Agreement ("Sales Agreement") that granted Jones P.A. the right to sell and market the NS100 in North Carolina. *Id*. Both the Research Agreement and the Sales Agreement contained an arbitration clause, which provided:

> [b]oth parties hereby agree to arbitrate any and all disputes arising out of or relating to this Agreement. Arbitration shall be binding on the parties and conducted in Dallas County, Texas pursuant to the Commercial Rules of Arbitration under the American Arbitration Association before a single arbitrator.

(Compl. Ex. A § 18(h), Doc. No. 1-1). Even though NSS was not an original party to the Sales Agreement, there has been no dispute for purposes of these motions that it later became bound by its arbitration clause through an assignment.

In June 2024, Neuro Solutions, Jones P.A., and NSS signed an Offer to Purchase and Contract (the "Second Contract") through which NSS would acquire the temporary exclusive rights to sell and market the NS100 in North America, with an option to purchase the permanent rights. (Compl. ¶ 16). The parties to the Second Contract contemplated signing a more comprehensive agreement, but it was never executed. As written, the Second Contract does not contain an arbitration provision. The Parties dispute here whether the Second Contract was a "novation" that supersedes the earlier Sales Agreement or was simply an "agreement to agree" that is not binding, at least as it relates to Neuro Solutions' arbitration rights under the Sales Agreement.

The relationship among the Parties did not prosper. In June 2025, NSS sued Neuro Solutions and Bingham in the Superior Court of Mecklenburg County, North Carolina, alleging claims for fraud, breach of contract, and unfair trade practices, and seeking to recover amounts that NSS paid on the Contract ($1,800,000) and trebled damages. (Compl. ¶ 18). Neuro Solutions and Bingham failed to answer so, on October 14, 2025, the state court entered a default judgment against Neuro Solutions and Bingham, jointly and severally, for $5,400,000 (the "Judgment"). (Compl. ¶ 20). Two days later, Bingham and Neuro Solutions moved to set aside the Judgment, arguing that they had not been properly served and that the arbitration clause in Neuro Solutions' earlier agreements barred the claims. (*See* Doc. No. 1-6). The state court denied the motion to set aside on January 12, 2026. (Compl. ¶ 23; Doc. No. 1-9). Bingham also filed a motion for temporary restraining order to enjoin the enforcement of the Judgment. (Doc. No. 1-10). Bingham also argued that an arbitration clause in the Sales Agreement bound NSS to arbitrate its dispute with Neuro Solutions so that the State Court lacked jurisdiction to enter the Judgment. (*Id.*) The state court denied that motion on April 20, 2026. (Compl. ¶¶ 24–25; Doc. No. 1-11). Neither of the State Court orders were appealed.

On June 3, 2026, Neuro Solutions submitted a demand for arbitration ("Demand") to the American Arbitration Association ("AAA"). (Doc. No. 1-12). The Demand commenced an arbitration ("Arbitration") against Plaintiffs, asserting claims for fraud and breach of contract related to the sales and marketing of a medical device. (*Id.*) In response, Plaintiffs filed this action seeking a declaration that they cannot lawfully be compelled to arbitrate Neuro Solutions' claims. *See* Doc. No. 1. To avoid continuing to participate in the arbitration, Plaintiffs filed, together with their Complaint, a Motion for Temporary Restraining Order and Motion for Preliminary Injunction. Those motions have been fully briefed, and the Court held a hearing on the motions on August 18, 2026. They are now ripe for the Court's ruling.

## III. DISCUSSION

### A. Likelihood of Success

Plaintiffs assert several arguments in support of their request for an injunction. First, with respect to the individual Plaintiffs, they argue that they are not parties to any agreement with an arbitration clause and thus cannot be compelled to arbitrate any claims. Neuro Solutions has (correctly) acceded to this argument and represented to the Court at oral argument that the individual Plaintiffs will be removed as defendants in the arbitration. With respect to NSS, Plaintiffs argue that the doctrine of res judicata precludes Neuro Solutions' claimed right to arbitration under the Sales Agreement because that issue was already decided in the earlier North Carolina state court proceedings. Also, Plaintiffs argue that the Second Contract, which does not include an arbitration clause, supersedes the Sales Agreement so NSS has no obligation to arbitrate any claims arising out of the Parties' relationship. Because the Court finds that Plaintiffs are likely to succeed on their argument that Neuro Solutions' claims are barred by res judicata / issue

preclusion, the Court need not and does not reach the second issue with respect to an argued "novation."

*Res judicata* encompasses two concepts: claim preclusion and issue preclusion (or collateral estoppel). *Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 318 (4th Cir. 2002). The rules of claim preclusion provide that if a later litigation arises from the same cause of action as a prior litigation, then the judgment in the prior action bars litigation "not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented." *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996). Issue preclusion, on the other hand, "is more narrowly drawn" and "operates to bar subsequent litigation of those legal and factual issues ... that were 'actually and necessarily determined by a court.'" *Orca Yachts L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 318 (4th Cir. 2002) (quoting *In re Varat Enters., Inc.*, 81 F.3d at 1315); *see Green v. Brock & Scott, PLLC*, No. 3:19-CV-00075-KDB, 2020 WL 3404740, at *2 (W.D.N.C. June 19, 2020), *on reconsideration,* No. 3:19-CV-00075-KDB, 2020 WL 5633060 (W.D.N.C. Sept. 21, 2020).

For issue preclusion / collateral estoppel to apply, (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum. *See Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.2d 219, 224 (4th Cir. 1998). All of those elements are present here.

In this case, as in the state court action, at issue is whether disputes related to the Parties' contractual relations must be arbitrated. Second and third, the issue was clearly raised (twice) to

the state court and had to have been actually determined adverse to Neuro Solutions, otherwise the state court would have been required to submit NSS's claims to arbitration and could not have entered the Judgment, by default or otherwise. *See Jeffers v. D'Allessandro*, 199 N.C. App. 86, 99, 681 S.E.2d 405, 415 (2009) ("Once the [court determines if the dispute must be arbitrated] the parties must take up all additional concerns with the arbitrator.'"); *Mccain v. Wells Fargo Bank, N.A.*, No. 3:25-CV-00951-KDB-WCM, 2026 WL 1275508, at *1 (W.D.N.C. May 8, 2026) ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."); *Wake Cnty. Bd. of Educ. v. Dow Roofing Sys., LLC*, 792 F. Supp. 2d 897, 900 (E.D.N.C. 2011) (whether the parties have agreed to arbitrate their disputes is a jurisdictional question). Finally, there is no question that the prior state court rulings are final and valid in the absence of an appeal and that Neuro Solutions had a full and fair opportunity to litigate the issue in the state court. Therefore, the state court's necessary rulings that NSS' claims were not subject to arbitration as argued by Neuro Solutions precludes this Court from ruling otherwise.

Accordingly, the Court finds that Plaintiffs have a likelihood of success on the merits of their request for a declaration that they may not be compelled to arbitrate Neuro Solutions' claims.

**B. Irrevocable Harm, Balance of Harms and the Public Interest**

The remaining required elements of a preliminary injunction need only be addressed briefly. Both Neuro Solutions and Plaintiffs agree that irrevocable harm, the balance of harms and the public interest all turn on the substantive issue of whether Neuro Solutions' claims are arbitrable. That is, if Plaintiffs are not required to participate in the arbitration, then they would be irrevocably harmed if they were forced to do so, and the balance of harms and public interest would fall in their favor. Converserly, if Neuro Solutions is entitled to pursue its claims in arbitration, then it would prevail on each factor. Because the Court has found that Plaintiffs are likely to

establish that they cannot lawfully be compelled to arbitrate Neuro Solutions' claims, it also concludes that Plaintiffs have established irrevocable harm and that the balance of harms and public interest favor entry of a preliminary injunction.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiffs' Motion for a Preliminary Injunction (Doc. No. 3) is **GRANTED**;
2. Neuro Solutions is enjoined from proceeding with or seeking any relief through the arbitration that it commenced with the American Arbitration Association on June 3, 2026; and
3. In the exercise of its discretion the Court finds that Plaintiffs are not required to post any bond to secure this injunctive relief.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: August 22, 2026

Kenneth D. Bell
United States District Judge